## ASA RICHARDSON v. ROBERT McKIM.

1. EQUITY; *Several Notes Secured by One Mortgage; Assignment of Part of the Notes; Pro Tanto Assignment of Security.* Where three notes are secured by the same mortgage, and are to become due at different times, and the two of said notes first to become due are first assigned, and afterward the other note is assigned to a different person, *held,* that in the absence of any agreement or paramount equity to the contrary, the two notes first assigned and first falling due, will be first paid out of the proceeds of the mortgaged property.

2. PARTIES; *Judgment Not Disturbed as to Persons Not Parties.* Where some of the persons who were parties in the court below are not made parties in the supreme court, and the judgment of the court below in a certain particular is complained of by the plaintiff in error, but the judgment in that particular could not properly be disturbed without affecting the interests of some of the parties below who were not made parties in the supreme court, the judgment will not be disturbed in that particular.

*Error from Douglas District Court.*

FORECLOSURE of mortgage, brought by one James W. Oulton as plaintiff, against Richard Rue and wife, Green Lewis, Joseph Hammond, William Edgerton, Thomas Cash, John Herman, *Asa Richardson, Robert McKim,* and W. W. Cockins, defendants. The defendants, other than Edgerton and Cash, severally answered, setting up their respective claims. The district court, at December Term 1875, found the amounts due the plaintiff and the answering defendants, respectively, and gave judgments therefor, and decreed a sale of a portion of the mortgaged premises, and directed the application of the proceeds. No complaint is made by any of the parties as to the amounts found due; nor of the decree by any of the parties except defendants *Richardson* and *McKim.* Regarding the claims of *Richardson* and *McKim,* the subjoined opinion states all necessary facts. *Richardson* brings the case here as plaintiff in error.

*Nevison & Alford,* for Richardson.

*R. J. Borgholthaus,* for McKim.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced in the court below by James W. Oulton on a certain promissory note and mortgage. Various persons were made parties defendant, and various questions were raised and decided in the court below; but only a few of such questions are now presented to this court, and these few are such only as were raised in the court below between two of the defendants, Asa Richardson and Robert McKim. Richardson is now the plaintiff in error, and McKim is the defendant in error.

It seems that in May 1871, Richard Rue held three promissory notes secured by a real-estate mortgage on a certain piece of land on which land both Richardson and Oulton also held mortgages. These notes of Rue's, and the mortgage made to secure them, were all

Statement of facts.

dated 15th May 1871, all executed by Thomas Cash and William Edgerton, and each note bearing interest from date at the rate of ten per cent. per annum. The first note was for $750, and due in six months; the second note was for $1,135, and due in twelve months; and the third note was for $1,135, and due in two years. Richardson purchased the first and second notes, and McKim the third; and the question now arising in the case is, whether either of said notes has priority over the others, and if so, which? The court below held that they were equal — that they were all entitled to an equal share of the proceeds of the mortgaged property, and that if the mortgaged property was not sufficient to pay all of them, then that they should be paid *pro rata*. At the time that Richardson purchased said notes, and prior thereto, he held a certain note for a large amount against said Rue, and also held a mortgage to secure such note on a certain forty-acre tract of land belonging to. Rue. Oulton, the plaintiff in the action in the court below, also held a mortgage on said land, (the same mortgage on which he finally brought this action;) but Oulton's mortgage was subsequent to Richardson's. Rue sold and conveyed twenty acres of said land to said Cash and Edgerton, and in part consideration therefor, Cash and Edgerton gave to Rue the said three notes and also the said mortgage on said twenty acres of land made to secure the notes. There were then three mortgages covering said twenty acres of land — first, Richardson's; second, Oulton's; and third, Rue's. Richardson then in consideration of said first two notes, and the Rue mortgage on said twenty acres of land, gave up to Rue the note which he held against Rue and his mortgage on said forty acres of land. This left Oulton's mortgage as the prior lien on said land, and left Richardson with only a second mortgage and second lien upon only one-half thereof, and upon only one-half of the land upon which he had previously held the first mortgage and the prior lien. Rue indorsed his name on said notes and on said mortgage, and then delivered the same to Richardson. About a week afterward, Rue assigned said

third note to McKim as collateral security for a debt previously existing in favor of McKim and against Rue. Whether anything was said at the time with reference to said mortgage, is not shown. Afterward, and in August 1871, Cash and Edgerton sold three acres of said twenty acres of land to John Herman. Herman desired to get said three acres free and clear from said Rue mortgage. So, by an understanding and arrangement between said Cash, Edgerton, Herman, Richardson, and Rue, Herman paid the whole consideration for said three acres of land (which was $375) to Richardson, and Richardson agreed to release said three acres from the said Rue mortgage. McKim did not know anything about this transaction until after it had all occurred.

We should think from the foregoing facts, and from all the facts in the case, that when Rue sold said first two notes and said mortgage to Richardson, he probably did not intend to release the mortgage as to any of said notes, but still that both he and Richardson did intend that the first two notes should have priority over the third. The fact that Richardson released a first mortgage on forty acres of land, and in its stead took a second mortgage on only twenty acres thereof; the fact that Rue indorsed his name on said mortgage and delivered it to Richardson; the fact that the two notes assigned to Richardson were the first that were assigned; the fact that the two notes assigned to Richardson were the first to become due; the fact that the mortgage itself provided that if default should be made in any payment the mortgage should become absolute, (not that all the notes should become due or payable,) and that the mortgaged property might then be sold to satisfy *the amount then due* as principal and interest; the fact that nothing seems to have been said or done concerning the mortgages when Rue assigned the third note to McKim; the fact that both Rue and Richardson afterward seemed to believe that Richardson was the sole owner of the mortgage; and the fact that the court below did not order said three acres to be sold to satisfy said note held by McKim although

1. Several notes secured by one mortgage; pro tanto assignment of security.

McKim had never released said three acres, would all seem to indicate that it was intended by both Richardson and Rue, when Rue assigned said notes and mortgage to Richardson, that the two notes assigned to Richardson should have priority over the other note; and if so, then said two notes would undoubtedly have precedence. (*Noyes v. White*, 9 Kas. 640.) But even if there was no such intention or understanding, still we think the same result would follow, for there was certainly no intention or understanding to the contrary. The mere facts, that the Richardson notes were first due and first assigned are sufficient in and of themselves, in the absence of any agreement or understanding to the contrary, and in the absence of any countervailing equity, to give to such notes the priority in their payment. The McKim note was not due when this action was commenced. Indeed, it was not due when McKim filed his answer therein. But possibly if his note was entitled to an equal consideration in the distribution of the mortgage-fund, if his note was entitled to a *pro rata* share of such fund, this would make but little difference. The right however of Richardson, under the mortgage, to resort to such fund before McKim's note became due, and his actual exercise of such right, would seem to indicate that Richardson's notes should have precedence in payment out of the mortgage fund. Nearly all the authorities hold that where two or more notes, secured by a single mortgage, fall due at different times, they should be paid out of the mortgage fund in the order of their maturity, unless a different agreement has been made between the parties, or unless some paramount equity should require a different order of payment. *Mitchell v. Ladew*, 36 Mo. 526; 38 Mo. 320, 325; *State Bank v. Tweedy*, 8 Blackf. (Ind.) 447; 4 Ind. 134; 7 Ind. 140; 14 Ind. 439; 17 Ind. 52; *Wood v. Trask*, 7 Wis. 566; 9 Wis. 57; 21 Wis. 674; *Gropengether v. Fejervary*, 9 Iowa, 164; 9 Iowa, 297; 11 Iowa, 211, 580; 13 Iowa, 274, 543; 17 Iowa, 506; *Vansant v. Allman*, 23 Ill. 30; 33 Ill. 481; *Wilson v. Hayward*, 6 Fla. 171; *Mc Vay v. Bloodgood*, 9 Porter, (Ala.) 547; *Larrabee v. Lumbert*, 32

Maine, 97; *Bank v. Covert*, 13 Ohio, 240; *Hunt v. Stiles*, 10
N. H. 466; *Gwathmeys v. Ragland*, 1 Randolph, (Va.) 466.
Where the holder of two or more notes secured by a single
mortgage, assigns one or more of the notes, and retains the
others, there is an equity of more or less force requiring that
the assignee should be first paid out of the mortgage fund;
and this equity is, in some cases, paramount to all others, and
of controlling force in the case. *Cullum v. Erwin*, 4 Ala.
452; *Stevenson v. Black*, Saxton Ch. (N. J.) 338; dissenting
opinion of Chief Justice Gibson in *Donley v. Hays*, 17 Serg.
& R. (Penn.) 405 to 408; *Noyes v. White*, 9 Kas. 640. In
such a case, when the holder of the notes assigns one or more
of them, and retains the others, he thereby assigns the mort-
gage security also, not *pro rata*, but *pro tanto;* that is, he
does not assign a proportionate share of the mortgage se-
curity, but assigns so much of the security as shall be ade-
quate for the payment of the amount of the note or notes
which he assigns. In what respect the equity arising from
the assignment or prior assignment of a portion of the notes
secured by a mortgage, is paramount to the equity arising
upon the maturity of the other notes so secured, it is entirely
unnecessary to consider in this case; for, in this case, all the
equities, and all the law, would give the precedence to the
notes held by Richardson.

There is still another question involved in this case. The
court below, by its judgment deprived McKim of all benefit
from a sale of the said three acres of land sold to Herman,
and in lieu thereof gave to McKim $225 out of
the proceeds of the sale of the other seventeen
acres of land covered by the Rue mortgage.
The plaintiff in error, Richardson, now com-
plains of that portion of the judgment which gives to
McKim said $225. But said judgment is so connected with
the rest of the judgment which really deprives McKim of
the benefit of said three acres of land, that we do not see
how we could well disturb the one without disturbing the
other. If McKim is to be deprived of the $225, he should

*2. Parties; judg-
ment not dis-
turbed as to
persons not
parties.*

certainly have the benefit of the sale of said three acres of land. It would certainly not be legal to deprive him of both. McKim never released said three acres from the Rue mortgage, and was never under any obligation to release the same. And he never did anything to lessen the value of his mortgage security. Richardson however released said three acres from said Rue mortgage; or at least he agreed to do so, and received a sufficient consideration therefor, and therefore in equity he is bound to so release the same. Of course, he could not release the land from McKim's lien. But he may have so bound himself by his agreement with Herman that he was bound in equity to Herman to see that it was so released, even if it lessened the value of his own security to the amount of $225 to do so. And Herman may have actually shown this to be the case on the trial in the court below. McKim acquiesces in the judgment of the court below. And Herman (although he is the owner of said three acres of land, and was a party to the suit in the court below,) has not been made a party in this court. Now we cannot render any judgment, or order any judgment to be rendered, that would affect Herman's interests. And if we should say that McKim cannot have said $225, but may sell said three acres of land, it would affect Herman's interests. If Herman had been made a party in this court, it is possible that he would have shown that the judgment releasing his land from said mortgage was entirely right. He might have brought up other portions of the proceedings of the court below showing that it was unquestionably right. McKim's interests are not identical with Herman's interests. On the contrary, they are adverse. Said three acres are ample security for said $225; and if McKim could get said $225 out of said three acres, instead of out of the seventeen acres, it would leave the whole of the seventeen acres as security for the balance of his and Richardson's claims. Hence, McKim's interests, as well as Richardson's, would be benefited by giving to McKim no preference for said $225 out of the proceeds of said seventeen acres, and by allowing

McKim to have said three acres sold and to get all he could out of such three acres.

The judgment of the court below will therefore be affirmed, except as follows: That portion of the judgment which provides for applying the balance of the proceeds of the sale of said seventeen acres of land, (after paying taxes, costs, and said $225, and interest,) to the payment of the Richardson and McKim judgments *pro rata*, will be so modified that Richardson's judgment will be paid in full prior to McKim's judgment for the balance on his note. Said proceeds will therefore be paid out as follows: First, for taxes; second, costs of sale and costs of the suit; third, said $225, and interest; fourth, Richardson's judgment in full; fifth, McKim's judgment for the balance on his note; sixth, balance, if any, to Cash and Edgerton. Judgment modified.

All the Justices concurring.