S. E. WHITNEY, Appellee, v. JOHN EICHNER et al., Appellees; HERBERT E. SKINNER, Intervener, Appellant.

**MORTGAGES:** Foreclosure—Disposition of Proceeds—Series of Equally
1    Maturing Notes. A series of promissory notes secured by the same mortgage, and *all falling due on the same day*, and in the hands of different holders, are each entitled to share pro rata in the proceeds of a mortgage foreclosure.

**BILLS AND NOTES:** Payment—Payment by Guarantor—Effect. Pay-
2    ment of a promissory note by the guarantor thereof will be deemed a *purchase* of the note as regards the maker, when such is the manifest intent of the guarantor.

**APPEAL AND ERROR:** Review—Presentation of Grounds—Unques-
3    tioned Appointment of Receiver. The court will, on appeal, treat the appointment of a receiver in mortgage foreclosure as a verity, even though the mortgage does not provide for such receiver, when such appointment is unquestioned in either the trial or the appellate court.

Headnote 1:   41 C. J. p. 686.   Headnote 2:   8 C. J. p. 587.   Headnote 3:   3 C. J. pp. 775, 1330.

Headnote 1:   19 R. C. L. 658.

*Appeal from Harrison District Court.*—W. C. RATCLIFF, Judge.

DECEMBER 13, 1927.

An action in equity to foreclose a mortgage. From a decree in favor of the plaintiff the intervener appeals.—*Reversed in part; affirmed in part.*

*Meighen, Knudson & Sturtz* and *Robertson & Havens,* for appellant.

*L. W. Fallon,* for S. E. Whitney, appellee.

ALBERT, J.—In 1921, John Eichner became the owner of the land described in the mortgage hereinafter referred to. On March 1, 1921, he executed a mortgage thereon to the Farmers

1. MORTGAGES: foreclosure: disposition of proceeds: series of equally maturing notes.

State Bank of Clermont, to secure six promissory notes, one note due March 1, 1922, and one due March 1, 1923, which were paid promptly, and are not involved in this litigation. The other four notes, which are unpaid, bore due date of March 1, 1924.

In December, 1921, plaintiff herein, S. E. Whitney, purchased all of said notes, and took an assignment of the mortgage securing the same. The Farmers State Bank of Clermont, in transferring these notes, indorsed the same without recourse, and one W. M. Harmer, who was, at the time, president of said bank, as a part of the same transaction signed a written guaranty, appearing on the back of each of said notes, as follows:

"For value received, I hereby guarantee the payment of the within note at maturity or at any time thereafter with interest at the rate of six per cent per annum until paid, waiving demand, notice of nonpayment and protest.

"[Signed] W. M. Harmer."

As the time approached for the maturing of these notes, Whitney insisted on their payment, which resulted in Harmer's paying to Whitney the amount due on one of said notes (known in the record as Exhibit 1), which Whitney indorsed to Harmer without recourse. On the same day, after this note had been turned over to Harmer, he hypothecated the same to one Spurry, but the note was later returned to Harmer, who then put the same up at the Farmers National Bank of Dodge Center as collateral to a loan or indebtedness of the Dodge Center Land Company, in which he was interested. The Farmers National Bank became insolvent, and Herbert E. Skinner was duly appointed receiver of the same. When he took charge of the bank, this note, Exhibit 1, was still held by the bank as collateral to the indebtedness of the Dodge Center Land Company.

On November 6, 1924, Whitney filed a petition to foreclose the mortgage. In that proceeding all of the present defendants

were made parties, except Skinner, and the bank for which he was receiver. On January 17, 1925, a decree was entered in the foreclosure proceedings by default, on published notice, all of the defendants named therein being nonresidents of the state.

On March 3, 1925, Skinner, as receiver for the Farmers National Bank, filed a motion to vacate the decree and to allow him to intervene. An order was made accordingly, and on March 24th he filed his petition of intervention, setting up that, as such receiver, he was the owner and holder of said note (Exhibit 1), and asking that in the foreclosure proceedings he be permitted to participate *pro rata* in the proceeds of the sale of the property under special execution. The matter was tried, the trial resulting in a decree confirming the foreclosure of the mortgage, but holding that the three notes still held by Whitney should be paid in full before any of the proceeds resulting from the sale should be applied on the receiver's note, Exhibit 1; also, certain other orders were made with reference to the receivership herein, which will be discussed later in the opinion. It is from this determination by the district court that Skinner, receiver, appeals.

In a nutshell, Whitney was the owner of three notes of $3,000 each, and one of $1,000, all bearing the same date, and all maturing at the same time. As heretofore stated, these notes were all guaranteed by Harmer. Harmer paid Whitney the amount due on one of said notes, Exhibit 1, and Whitney indorsed the same to Harmer, without recourse. The question therefore is, Under such circumstances, are the three notes still held by Whitney entitled to priority over the note held by Skinner, receiver?

Some fundamental questions of law are settled, among which are:

First, that the transfer of one of a series of notes secured by a mortgage carries to the transferee the benefit of the mortgage, even though the mortgage may not be assigned to him. *Crow, McCreary & Co. v. Vance,* 4 Iowa (Clarke) 434; *Pope & Slocum v. Jacobus,* 10 Iowa 262; *Bank of State of Indiana v. Anderson,* 14 Iowa 544; *Updegraft v. Edwards,* 45 Iowa 513; *Shoemaker v. Ragland,* 202 Iowa 947. Again, it has been settled in this state through a consistent line of holdings, commencing with *Grapengether v. Fejervary,* 9 Iowa 163, that,

under such circumstances as appear in this case, but where the notes mature at different dates, and one or more of a series are transferred, the proceeds of the sale shall be applied to the payment of the notes in the order in which they fall due. *Hinds v. Mooers,* 11 Iowa 211; *Sangster v. Love,* 11 Iowa 580; *Reeder v. Carey,* 13 Iowa 274; *Massie v. Sharpe,* 13 Iowa 542; *Isett & Brewster v. Lucas,* 17 Iowa 503; *Leavitt & Johnson v. Reynolds,* 79 Iowa 348. But this line of cases is not controlling in the case at bar, for the reason that in the instant case the date of maturity of all of these notes is March 1, 1924; hence, if we follow the suggestion made by the court in the *Grapengether* case, supra, the status of this situation, in theory, would be that Whitney had a mortgage for the balance due on his three notes, and Skinner, receiver, had a mortgage for the balance due on his note, Exhibit 1; and if we treat these parties as though each had a separate mortgage, then their mortgages cover the same land, bear the same date, and are due on the same date, with no provision as to priority.

We have been cited to no case, and find none, in our state that touches this particular point.

The question seems to have been settled generally in our sister states, and the holding seems to be quite uniform that, under such circumstances, the holders of the respective notes should share *pro rata* in the proceeds of the sale of the property, no one having priority over the other. The Alabama and Virginia courts hold that the order of assignment or transfer of the notes should determine the priority. An elaborate note on this proposition may be found in 41 Corpus Juris 686, Note 25. We are satisfied that the rule announced in this long line of decisions is the equitable rule, and should be adopted by us in cases of this kind.

As applied to the facts in this case, the parties have stipulated as follows:

"It is further agreed that the issue in this case be narrowed and limited to the question of whether or not Exhibit 1 of the intervener has been paid and canceled, or, on the other hand, whether Exhibit 1 of the intervener is still an outstanding obligation of the maker of the note."

Without detailing the testimony, it is sufficient to say that, before Harmer took over this note (Exhibit 1), he consulted an

attorney, and was advised as to just what his status would be
in case he took up this note; and his testimony
is undisputed that he had no intention whatever
of paying or canceling said note; and in this
he is corroborated by the fact that written on the back of said
note is the indorsement of Whitney, without recourse. He
testified that he purchased this note, and had no other intention.

2. BILLS AND
NOTES: payment:
payment by
guarantor: effect.

It is not claimed by any of the parties that Eichner, or any-
one for him, ever paid said note. We are satisfied that the
record abundantly shows that this note (Exhibit 1) has never
been paid. We are further satisfied, under the rules announced
herein, that the court should not have made the order giv-
ing Whitney and his three notes priority over the note held by
the receiver of this bank. As throwing much light on a situa-
tion such as this, see *Dilenbeck v. Herrold,* 183 Iowa 264. The
only question decided at this point in the case is that, under the
stipulation of the parties, the Whitney notes were not entitled
to a priority over the Harmer note. The decree therein entered
will be modified so as to provide that, as among the four notes,
there shall be no priority, and the proceeds of the sale under
the special execution in the foreclosure case shall be applied
*pro rata* on all of the notes.

It appears in this proceeding that at one time a receiver
was appointed, to take charge of this real estate and collect the
rents thereon. It is stipulated in the record that this land is of
less value at the present time than the amount
due on these notes, with interest and costs of
foreclosure. The mortgage does not, by its
terms, pledge the rents and profits. However,
as there is no complaint in the record as to the
appointment of this receiver, we accept it as a verity. While it
is true that the plaintiffs have stipulated that they make no
claim to the rents and profits of this land, yet it may be a vital
question in the end, in determining just how the proceeds of
the sale shall be divided, as to whether any of said rents and
profits are to be charged against the note held by the receiver.
The lower court made no ruling on this proposition, but simply
continued the receiver; and until the lower court passes on the
proposition, we have nothing before us for review.

3. APPEAL AND ER-
ROR: review:
presentation of
grounds: un-
questioned ap-
pointment of
receiver.

As. to the intervener's appeal, the case is reversed; otherwise, affirmed.—*Reversed in part; affirmed in part.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.