HAROLD R. BECHTEL, Appellant, v. LOUIE MOSTROM, County Treasurer, Appellee.

No. 41501.

JUNE 24, 1932.

Carl H. Lambach, for appellant.

O. J. Wardwell, for appellee.

Tom Boynton, amicus curiæ.

STEVENS, J.—The facts upon which the cases were tried and submitted in the district court are stipulated and appellee has neither appeared nor filed brief and argument in the cases. The drainage districts are identified and described in the record as Drainage District No. 46 and Drainage District No. 48. The bonds issued by Drainage District No. 46, serially numbered from 1 to 74, both inclusive, aggregated $70,400. The bonds issued by District No. 48, serially numbered from 1 to 66, both inclusive, aggregated $65,100. All of the bonds issued by the respective districts prior to May 1st, 1930, have been fully paid and retired. The controversy in District No. 46 involves bonds No. 33-48, both inclusive, and in District No. 48 bonds No. 26-30, both inclusive. At the time of the trial, the county treasurer had on hand funds of District No. 46 in the sum of $5906.82 and of District No. 48 $5446.27. The amounts thus held by the treasurer were not sufficient to pay these bonds in full. Special assessments sufficient to pay the bonds issued by each district as they should mature were laid upon the property respectively situated therein. The shortage of funds results from the failure of the owners of certain property liable therefor to pay the installments as they matured. In each of the districts one or more tracts have been sold for taxes at scavenger sale for a nominal sum. There has been no redemption from such sales, but the time allowed therefor has not yet expired. The county treasurer refused to pay the funds on hand in each of the respective districts to the satisfaction of the bonds in controversy. These actions in mandamus were brought to compel the county treasurer to apply the same, so far as available, to the payment thereof. The district court held that the installment of taxes paid in a given year was for the payment of bonds maturing in such year and directed the county treasurer to apply the funds

in his hands in accordance with this holding. Not all of the funds on hand represented installments paid in the year on which the bonds matured.

It is the claim and contention of appellant that he is entitled to have all of the funds of the respective districts, no matter when or in what year the installments were paid, applied to the payment of the bonds respectively in controversy.

The statutes governing the issuance, maturity and sale of drainage bonds, so far as material, are Sections 7503, 7504, 7505 and 7506, Code, 1924, and are as follows:

"Sec. 7503. When a drainage district has been established or the making of any subsequent repair or improvement determined upon, if the board of supervisors shall find that the cost of such improvement will create assessments against the land included therein greater than should be levied in a single year upon the lands benefited by such improvement, then, instead of issuing improvement certificates, as provided in the four preceding sections, the board may fix the amount that shall be levied and collected each year until such cost and expenses are paid, and may issue drainage bonds of the county covering all assessments exclusive of assessments of twenty dollars and less.

"Sec. 7504. Each of such bonds shall be numbered and have printed upon its face that it is a 'Drainage Bond,' stating the county and number of the district for which it is issued, the date and maturity thereof, that it is in pursuance of a resolution of the board of supervisors, that it is to be paid only from taxes for levee and drainage improvement purposes levied and collected on the lands assessed for benefits within the district for which the bond is issued.

"Sec. 7505. In no case shall the aggregate amount of all bonds issued exceed the benefits assessed. Such bonds shall not be issued for a greater amount than the aggregate amount of assessments for the payment of which they are issued, nor for a longer period of maturity than twenty years, and bear a rate of interest not to exceed five per cent per annum, payable semi-annually, on June first and December first of each year.

"Sec. 7506. The board shall fix the amount, maturity, and interest of all bonds to be issued. It shall determine the amount of assessments to highways for benefits within the district to be

covered by each bond issue. The taxes levied for benefits to highways within any drainage or levee district shall be paid at the same times and in the same proportion as assessments against the lands of private owners.''

Each of the bonds issued contained the following provision:

''This bond is based upon and constitutes a lien upon and is payable solely out of the proceeds of the special assessments for benefits heretofore legally levied on the lands to be benefited and the said special assessments are hereby irrevocably pledged therefor.''

The date of the maturity of each bond in the respective series is stated therein. The statute contemplates and requires that special assessments sufficient to pay the bonds as they mature in each year be laid upon the land of the Drainage District. The statute was fully complied with in each of the cases before us. Unless, therefore, the delinquent installments are paid, a deficit is sure to result and the aggregate sum collected will be insufficient to pay all of the bonds in full.

The single question necessary to be answered on this appeal is: Shall the defendant county treasurer be peremptorily directed to apply all of the drainage funds in his hands belonging to the respective districts to the bonds already matured and in controversy in these actions? Whether the legislature has made provision for the levying of subsequent special assessments for the purpose of supplying a deficit, should such result, is not before us at this time. The question necessary to be decided is a narrow one, and must be categorically answered.

As will be observed, the duty of fixing the maturity of drainage bonds rests upon the board of supervisors. When the maturity is fixed by that body, the law contemplates payment on the date fixed. All of the bonds issued on behalf of the respective districts mature May 1st in a given year. The installments in each year have presumptively at least been paid. If so, the duty of the treasurer to pay the bonds then maturing upon presentation clearly exists. We find nothing in the statute in any way requiring the installments received by the treasurer in a given year only to be paid upon bonds maturing May 1st

of such year. Interest on each bond in a given series becomes due May 1st. The holder of a bond already matured is, it seems to us, clearly entitled to have the same paid in full if funds to that extent are available in the hands of the treasurer therefor. Each of the bonds is made a lien upon the special assessments for the purpose of paying the same. The law contemplates that the bonds must be paid and retired in the order of their maturity. This is the very purpose for which the statute requires that the maturity of such bond be fixed. This being true, the lien upon the special assessments in favor of the holders of bonds first maturing is prior to the lien of unmatured bonds. The case is analogous to notes of different maturities secured by a given mortgage. In such case, the notes are to be paid in full in the order of their maturity. White v. Gutshall, 213 Iowa 401; Whitney v. Eichner, 204 Iowa 1178. If, therefore, the funds in the hands of the county treasurer are insufficient to pay bonds maturing on May 1st in a given year in full and the holder of such bond is entitled to receive only the proceeds of the installments paid during such year, it must be because his lien is only upon installments so paid. If this theory were adopted, there would be no priority of lien whatever, but a lien upon certain specific funds only. Such is not in the opinion of the court the interpretation to be given to the statutes quoted. Bonds are to be paid in the order of their maturity, and this must necessarily mean that they are required to be paid out of any funds of the drainage district then in the hands of the treasurer, without regard to the time when the installments were paid. Any other rule would lead to confusion and uncertainty. No authorities have been called to our attention bearing directly upon the question in issue, and we have been unable to find any. Necessarily, the question is largely, if not wholly, one of statutory construction.

It is our conclusion that the judgment and decree of the court should be modified and the defendant county treasurer directed in each of the cases first to apply the full amount of the funds of the respective districts in his hands, so far as necessary for that purpose, to the payment of the bonds in controversy. The cause will be remanded to the district court for

judgment and decree in harmony with this opinion.—Modified and affirmed.

Wagner, C. J., and Faville, Albert, Morling, Kindig, and Grimm, JJ., concur.

Evans and De Graff, JJ., dissent.