### DANIEL ANDERSON v. ELIZA JANE ANDERSON.

1. HUSBAND AND WIFE, *as Witnesses after Divorce.* The divorced wife, in an action against her husband and his vendee to set aside a deed to the homestead because her signature to the deed was obtained by duress, cannot be allowed to testify to threats made to her by her husband while the marriage relation existed.

2. DURESS; *Title of Purchaser.* If a wife sign a deed of the homestead under duress she does not give that consent to the alienation which the constitution requires; and in such case the "good faith" of the purchaser cannot be considered in determining the validity of the deed.

*Error from Brown District Court.*

DEFENDANT IN ERROR was the divorced wife of *Thomas Anderson;* and she brought this action to set aside a deed of the homestead, made by said *Thomas* and herself before the divorce, to *Daniel Anderson,* plaintiff in error. She alleged that she executed the deed under duress. Her former hus-

band, and *Daniel*, were joined as defendants. The case tried at the August Term 1871. Plaintiff below, over objection and exception, gave evidence of certain statements and threats made by *Thomas* to her to procure her signature to the deed. Plaintiff in error asked several instructions which were refused, one of them being as follows:

"1st. If the jury find from the evidence that Daniel Anderson purchased the land in dispute for a valuable consideration, and without connivance on his part with Thomas Anderson as charged, and without any knowledge of any violence being practiced by Thomas Anderson towards his wife to compel her to execute the deed, they must find for the defendant."

Verdict and judgment in favor of the plaintiff, and *Daniel* Anderson brings the case here on error.

*Albert Perry*, for plaintiff in error:

1. The code makes the wife incompetent as a witness for or against her husband while the marriage relation existed, or afterwards, and excludes confidential communications made by one to the other in all cases. And in this respect the code has not changed the rule of common law. Code § 323, Gen. Stat., 692; 5 Selden, 153; 26 Barb., 612, 615; 2 Hill, 186; 8 Paige, 582; 9 Vt., 41.

2. The court erred in refusing to instruct the jury as asked for by plaintiff in error. And the question whether Daniel Anderson was a purchaser in good faith, for a valuable consideration, and without notice of the fraud, was excluded from the inquiry of the jury. This was error.

If a party purchases in good faith for a valuable consideration, and without notice of any fraud, the sale cannot be impeached. 27 Penn. St., 22; 51 id., 290; 2 Pick., 183; 9 Tiffany, 319; 1 Story Eq., §§ 108, 165, 139, 646.

*Lacock & Johnson*, and *W. W. Guthrie*, for defendant in error:

1. The land being a homestead could not be "alienated without the joint *consent* of husband and wife." Const., art. 15, § 9. If executed by the wife under *duress* she gave no

*consent.* "Consent" means a voluntary act, not an act procured by the violence of another. What will constitute duress must depend upon the circumstances of each particular case; and in this day is, "any exercise or reasonable fear of exercise of violence which would overcome the power of reason of that particular person under the circumstances in which he was placed at that time." 2 Greenl. Ev., § 301; 18 Md., 305; 26 N. Y., 9.

·2. Defendant in error testified as to *facts*, not as to communications "communicated to her in consequence of the trust and confidence reposed in her by her husband," which alone are excluded from policy under our statute: 1 Hill 63; 2 id., 187; 7 Vt., 506; 13 Pick., 445; 1 B. Mon., 224; 3 Cold. (Tenn.,) 414.

Had Daniel Anderson sued Thomas in ejectment during the marriage, could not Eliza have defended and proved by her own testimony duress, and thus held the homestead? Or, if her name ·had been forged to the deed by her husband, was she not a competent witness to prove the fact?

3. The instructions asked by plaintiff in error were properly refused. The good faith of the purchaser is not a question to be considered. He was not a "purchaser" at all of the *homestead,* unless he had the *consent* of the wife, as well as the husband. The homestead is the joint property of both, and the deed must be the deed of both. He is an innocent purchaser only with the "consent" of those who alone could make conveyance to him.

The opinion of the court was delivered by

KINGMAN, C. J.: The defendant in error having obtained a divorce from her husband, and a judgment for alimony against him, and an execution that issued upon the judgment having been returned "No property found," she brought an action to set aside a deed from her former husband, Thomas Anderson, to his brother, Daniel Anderson, to a certain quarter-section of land in Brown county. The land was owned by Thomas Anderson, and was occupied by himself

and family, including defendant in error, at the time the deed was made. She alleged that her signature to the deed was obtained by duress. The evidence is not all in the record, but sufficient to show the questions raised. The land sold was the homestead of the family. To alienate it the joint consent of the husband and wife was required. *Prima facie* that consent was shown by the deed. The defendant in error (plaintiff below) must show that her signature to the deed was made under such circumstances as could not be held to indicate her consent. In support of this point in her case she testified in her own behalf, and in her testimony there is the following, which was admitted over the objections of plaintiff in error:

"A short time before the deed was executed my husband, Thomas Anderson, came into our house on the place, which was our homestead, and asked me, no one being present but us and our little girl, if I was going to sign that deed? I told him I was not—you have promised to keep it as a homestead. He came and struck me with his fists, first on one side of my head, and then on the other, three times, and pulled my hair. He said if he did not get the deed signed one way he would another. I was in poor health; he had been talking to me before about signing the deed. I told him at the first conversation that I did not want to sign the deed. He said nothing further until evening, when he brought the axe in, and sharpened a large knife; said nothing, but looked very angry; said he was going in the morning to get 'Squire Streeter to take the acknowledgment of the deed. No one was present but us and our little girl."

The rule by which the admissibility of this testimony is to be determined is certain, and is not obscure. It is found in the latter part of the third clause of § 323 of the code, and is as follows: "But in no case shall either" (that is, husband or wife,) "be permitted to testify concerning any communication made by one to the other during the marriage, whether called while that relation subsisted or afterwards." This is but declaratory of the rule of the common law, and the difficulty grows out of the application of the law to the facts, and not from any uncertainty as to the law that is to control. The

testimony as quoted is in direct response to the question asked, and the question itself was objected to on the same grounds that are urged against the admissibility of the evidence. The question then is, does the testimony disclose any communication made to the wife by the husband while the marriage relation subsisted between them? To this question we are constrained to make answer in the affirmative. It seems a peculiar hardship to allow a husband to shield himself under the protection of the law from the consequences of his own outrages. But the rule of law is absolute, and is founded in wisdom, and it would be a great evil to weaken its universal application to meet the exigencies of a single case, however much that case may appeal to our sense of justice.

The only other error urged in this court is as to the instructions. But little of the evidence is in the record, and there is nothing in the scraps preserved that tends in any way to show that the plaintiff in error was not a *bona fide* purchaser for a valuable consideration. So far as we can perceive the jury decided the case on the ground that defendant in error signed the deed under duress. If she did so, she never gave that consent to the alienation of the homestead that the constitution requires, and the court submitted this question fairly to the jury under proper instructions. As we understand the law on this point the good faith of the purchaser cuts no figure, and the court correctly refused the first instruction asked by plaintiff in error. The second instruction asked is not law in any case, and was therefore properly refused.

For the error in the admission of the testimony, the judgment must be reversed, and the case remanded for further proceedings.

All the Justices concurring.