## ILLINOIS BANKERS LIFE ASSURANCE CO. v. DAY et al.

No. 26475. Oct. 20, 1936.

Rehearing Denied Dec. 8, 1936.

Black & Black, for plaintiff in error.

Morris & Wilhite, for defendant in error.

PER CURIAM. For convenience we shall refer to the parties as they appeared in the trial court. On October 1, 1929, the defendants, Mary Ellen Day and Will S. Day, borrowed $2,400 from the Porter Mortgage Company, and on that date they executed and delivered to the Porter Mortgage Company their promissory note in the sum of $2,400. As security for said note, they also made, executed, and delivered a real estate mortgage on their homestead farm. Before maturity, and for a valuable consideration, and without notice of any alleged defects in said instruments, or any defenses thereto, said note and mortgage were sold, assigned, and delivered to the Illinois Bankers Life Association, which on November 19, 1929, for a valuable consideration, without notice and before maturity, indorsed said note and assigned said mortgage to the plaintiff herein. The defendants defaulted in the payment of an interest installment due on said note, and the plaintiff thereafter commenced this action in conventional form, in which it sought to recover a personal judgment against the defendants and to foreclose the aforesaid mortgage. The defendant Will S. Day, the husband, defaulted. Mary Ellen Day, the wife, filed her answer in which she admitted the execution of the note and mortgage, but alleged that she was compelled to execute said instruments under duress, menace, and extortion by her husband, by reason of which, in her cross-petition, she asks for cancellation of the note and mortgage.

Plaintiff filed a reply to defendant's answer, and as an answer to defendant's cross-petition plaintiff alleged that it was an innocent purchaser for value of the instruments involved, without notice of the infirmity alleged.

In support of the judgment of the trial court, the defendant makes three principal contentions:

(1) That under the Constitution and statutes of Oklahoma, an encumbrance upon a homestead is void, unless the wife voluntarily joins in the execution of the instrument, and that since the proof is undisputed that the wife executed the note and mortgage involved herein under duress, practiced by her husband, the mortgage is void as against all persons, including an innocent purchaser for value before maturity.

(2) That since defendant established that the original mortgagee's title to the note and mortgage was defective, because its agent had knowledge of the alleged duress, defendant contends that the burden shifted to the plaintiff to establish that, as an assignee, it was an innocent purchaser for value before maturity, and since plaintiff did not produce such proof at the trial, the judgment of the trial court was proper.

(3) That the note was nonnegotiable because it was not payable at a fixed time.

We shall discuss defendant's contentions in the foregoing enumerated order.

1. Duress. The first and important question presented in this appeal is, whether or not the defense of duress is available to a wife upon the foreclosure of a mortgage on her homestead, where the note and mortgage were purchased for valuable consideration in due course before maturity, and without notice of any alleged defect or infirmity. Defendant contends that under section 2, art. 12, of the Constitution of Oklahoma, and section 9661, Okla. Stats. 1931, an encumbrance upon a homestead is void, unless the wife voluntarily joins in the execution of the instrument. Defendant contends that since the proof is undisputed that the wife executed the note and mortgage involved herein under duress, practiced by her husband, the encumbrance is void against the world, including an innocent purchaser for value before maturity. Although the constitutional and statutory provisions referred to have long been the law in this state, this court has never before been called on to pass upon the identical question. There are only a few authorities in the reported cases on the proposition. The question being a novel one, in addition to reviewing the briefs presented by counsel, we have made our own investigation of the law, and conclude that defendant's contention cannot and should not be sustained.

The foregoing question was answered in the negative in the case of Beals v. Neddo (Circuit Court, D. Kansas) 2 Fed. 41, wherein the court, in considering a practically analogous factual situation, declared:

"The doctrine is old and undisputable that the holder of negotiable paper, before maturity and without notice, takes it clear of equities between the original parties, and neither fraud nor duress would invalidate it in his hands." Carpenter v. Logan, 16 Wall. 271, 275; Sawyer v. Prickett, 19 Wall. 147; 1 Jones on Mort., sec. 834, and cases cited.

In this state duress in contracts is defined by statute. Section 9414, Okla. Stats. 1931, provides as follows:

"Duress consists in:

"First. Unlawful confinement of the person of the party, or of husband or wife of such party, or of an ancestor, descendant, or adopted child of such party, husband or wife.

"Second. Unlawful detention of the property of any such person; or,

"Third. Confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly, harassing or oppressive."

In the case of Pickenbrock v. Smith, 43 Okla. 585, 143 P. 675, the rule as to what constitutes duress is announced in the syllabus as follows:

"The question in each such case is: Was the person so acted upon by threats of the person claiming the benefit of the contract, for the purpose of obtaining such contract, as to be bereft of that quality of mind essential to the making of a contract, and was the contract thereby obtained?"

In the body of the opinion of said case, we made the following pertinent statements:

"In other words, the general rule is laid down in Radich v. Hutchins, 95 U. S. 212, 24 L. Ed. 409: 'To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, * * * there must be some actual or threatened exercise of power possessed * * * by the party exacting or receiving the payment over the person or property of another from which the latter has no other means of immediate relief than by making the payment. As stated by the Court of Appeals of Maryland, the doctrine established by the authorities is that "a payment is not to be regarded as compulsory unless made to emancipate the person or property from actual and existing duress imposed upon it by the party to whom the money is paid." Baltimore v. Lefferman, 4 Gill (Md.) 425, 45 Am. Dec. 145; Brumagin v. Tillinghast, 18 Cal. 265; 79 Am. Dec. 176; Mays v. Cincinnati, 1 Ohio St. 268, See, also, Cribbs v. Sowle, 87 Mich. 340, 49 N. W.

587, 24 Am. St. Rep. 166; Briggs v. Withey, 24 Mich. 136. What is there said as to compulsory payments is, of course, applicable here as to a compulsory promise to pay."

Counsel for defendant cite one Iowa and two Kansas cases in support of the defendant's contention, that the note and mortgage are void because of the duress practiced on the wife by her husband. In the cited case of First National Bank v. Bryan (Iowa) 17 N. W. 165, the decision of the court was based on the fact that mortgages were not intended to pass as commercial paper. This is not the general rule and is not the rule in Oklahoma. Furthermore, in the much later case of Farmers National Life Insurance Co. v. Ryg, 228 N. W. 63, 65, the Supreme Court of Iowa disapproved the doctrine in the Bryan Case, supra.

The case of Berry v. Berry, 47 P. 837, the leading Kansas case cited by defendant's counsel, was decided 49 years ago, and is directly in point. However, the decision in that case was in part based upon First National Bank v. Bryan, supra, the doctrine of which was repudiated by the Supreme Court of Iowa in Farmers National Life Insurance Co. v. Ryg, supra. We do not find that the Berry Case, supra, has ever been cited or followed. The other Kansas case cited by defendant's counsel, Anderson v. Anderson, 9 Kan. 112, was apparently based upon the theory that the husband was acting as the agent for the mortgagee. For this reason we do not consider it in point.

The case of Rowley v. Rowley, 144 Okla. 157, 290 P. 181, involved the defense of duress by the wife, who executed a note secured by a mortgage on the homestead, but the question of innocent purchaser for value was not presented therein nor decided by us.

There is no evidence in the record that defendant's husband made any threats on her in the presence of the agent of the original mortgagee. The most favorable construction of defendant's testimony on this point is that the defendant's husband insisted that defendant execute the instruments. Such language and insistence do not constitute legal duress. In the recent case of Luna v. Miller, 171 Okla. 260, 42 P. (2d) 809, we held that under the statutes of Oklahoma threats made by the husband that he would leave his wife unless she signed a certain note and mortgage do not constitute such duress as will void such instruments. Britton v. Lombard, 52 Okla. 41, 152 P. 590.

The wife should have the right to protect her home against any improvident husband,

but she should assert her right as far as possible in such a manner as not to deceive or defraud persons purchasing homestead property, or loaning money secured by a mortgage thereon in good faith. In this case the evidence is that the wife at no time informed the notary, the original mortgagee, or either of the subsequent assignees, including the plaintiff herein, of the alleged threats of violence, and there is no evidence in the record that the defendant, or anyone on her behalf, ever communicated said information to the plaintiff herein. There is also evidence in the record that certain interest payments on the loan were made by defendant long after the date that the loan was made. Under such circumstances, the evidence presented does not present equities superior to those of the plaintiff, and to declare such a conveyance void, clear and convincing evidence, not only of fraud or duress, but also of notice thereof to the mortgagee, is essential.

This court is warranted in taking judicial knowledge of the fact that homestead properties are the subject of a substantial number of mortgages and conveyances involving real estate. If the rule contended for by defendant were sustained by us, no investor would be safe in acquiring real estate mortgages, or the title to real estate involving homesteads. It would be difficult for an owner to encumber or sell his homestead. As Judge Foster stated it, in the opinion of the court in the Beals Case, supra, "It opens wide the door for collusion between husband and wife to defraud unsuspecting purchasers."

Notwithstanding section 2, article 12, of the Constitution of the state of Oklahoma, and section 9661, O. S. 1931, invalidating mortgages or other encumbrances on a homestead, unless husband and wife join in the execution of such instruments, the defense of duress by the wife is not available where such instruments are purchased by an innocent purchaser for value before maturity, in due course. The holder of negotiable paper before maturity and without notice takes it clear of equities between the original parties, and neither fraud nor duress would invalidate it in his hands. Clark v. Pease, 41 N. H. 425; Beals v. Neddo, supra.

Mortgages given to secure notes are incidents to the notes and become negotiable. The rule generally recognized is that the mortgage follows the debt as a mere incident, shares the immunity of the note from defendant's equities, so that in the proceedings to enforce the mortgage nothing can be alleged against it which could not have been set up in defense to an action at law upon the note. The transfer of the note carries with it the security. In the case of Carpenter v. Longan, supra, the Supreme Court of the United States, speaking through Mr. Justice Swayne, makes this statement:

"All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both."

We, therefore, conclude that the defense of duress is not available against the foreclosure of a mortgage upon a homestead, where a negotiable note and mortgage have come into the hands of an innocent purchaser for value, before maturity.

2. Burden of Proof. The defendant's next contention is that, since the defendant established that the original mortgagee's title to the note and mortgage was defective, in that its agent had knowledge of the alleged duress, the burden of proof shifted to the plaintiff, as assignee, to establish that it was an innocent purchaser for value before maturity, and, plaintiff having failed to produce such proof, the judgment of the trial court was proper.

We do not agree that the evidence disclosed that the original mortgagee had knowledge of the alleged duress. The defendant, in her examination in chief, testified that she executed the note and mortgage at her home; that in the presence of Courtney, the notary public, and agent of the original mortgagee, in the living room of her home, she refused to execute the note and mortgage; that her husband said, "You have got to sign that note and mortgage, because I have got to have the money, going to have it"; that she said, "No, you are not going to get it;" that she then went into her bedroom. Her husband followed her there; her daughter was the only other person in the bedroom. She then testified as follows:

"He says, 'I want you to go sign those papers. If you don't, I am going to kill you.' He grabbed hold of me. I knew he had his gun on. That scared me. I jumped up then, took hold of him, and he says, 'You are going to sign them papers,' and it scared me, and, of course, naturally, I knew he would carry out his threats, and I just signed them."

The undisputed evidence is, defendant thereafter went to the living room, where she executed the "papers" before R. D. Courtney,

a notary public, who was also the agent of the Porter Mortgage Company, the original mortgagee, who was the only other person present. The daughter corroborated her mother's testimony, and also testified that she did not see Courtney, the notary public. Courtney testified that he took the acknowledgment of the mortgagors; that the husband was not under the influence of liquor, and that he did not hear any "threatening" by the husband toward the defendant wife when the instruments were executed. Neither the defendant wife nor anyone else testified that Courtney heard or was in a position to hear the threats alleged to have been made by the defendant's husband on said occasion.

The defendant, having admitted the execution of the note and mortgage, assumed the burden of proof. The record does not reflect that this burden was discharged.

Section 11358, Okla. Stats. 1931, provides:

"Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title."

Under the foregoing statute plaintiff is deemed prima facie to be a holder in due course. Defendant did not plead in her answer and did not establish by competent evidence that the original mortgagee, the Illinois Bankers Life Association, or the plaintiff, had notice of the alleged duress. The record does not reflect that the title of the original mortgagee, or anyone who negotiated the instruments, was defective. Plaintiff, therefore, is deemed prima facie to be a holder in due course under the foregoing statute. The assignment of a negotiable note before its maturity raises the presumption of a want of notice of any defense to it, and this presumption stands until it is overcome by sufficient proof. Carpenter v. Longan, supra.

3. Negotiability of Note. The last contention made by the defendant is, the note was nonnegotiable because the acceleration clause therein left the maturity date to the option of the holder upon default of payment of interest installments. Defendant contends that the note is not negotiable, because it is not payable at a fixed time. However, we are unable to agree with this contention. The great weight of authority is to the effect that a provision in a note, that the whole shall be due, either absolutely or at the option of the holder, on default in the payment of any installment, or in the payment of the interest, does not affect its negotiability. This rule also applies where a note is to be construed in connection with the mortgage, which provides for an option to declare the principal due on default in the payment of interest. The Negotiable Instruments Law expressly provides that the sum payable is a sum certain within the meaning of the act, although it is to be paid by stated installments, with a provision that on default in the payment of any installment, or of the interest, the whole shall become due. The early case of Bell v. Riggs, 34 Okla. 834, 127 P. 427, has been abrogated by the enactment of the Negotiable Instruments Law. Section 11301, Okla. Stats. 1931; Westlake v. Cooper, 69 Okla. 212, 171 P. 859; and 8 C. J. sec. 240, p. 139.

In our opinion, the other propositions contended for by defendant are without merit.

For the foregoing reasons, the judgment of the trial court is reversed, with the direction that judgment be entered for the plaintiff in accordance with the prayer of plaintiff's petition.

The Supreme Court acknowledges the aid of Attorneys Travis I. Milsten, John M. Goldesberry, and I. L. Lockewitz in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Travis I. Milsten and approved by Messrs. John M. Goldesberry and I. L. Lockewitz, this cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, as modified.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.